paid his money.  Moreover, the parties by their counsel mutually validated the articles in July 1794, at ther appointed meeting.

Bonham's demand against the estate of John Walker was not then regularly adjusted.  Three judgments stood against the same estate apparently unsatisfied; several judgments stood against four of the children, the amount whereof could not then be ascertained.

The balance due to the administrators, and Bonham's debt, were entitled to preference in payment, and the shares of the several children in the appraisement moneys must necessarily be diminished in proportion thereto.  The liens of the respective judgment creditors against the different children, must also be deducted from their purparts.  Under these circumstances, none of the children would be entitled to their shares of the valuation, unless they gave refunding bonds.  The Orphan's Court had refused to receive the money tendered by Diermond and make the appropriation.  This work he could not himself perform, but he was willing to pay the residue of the valuation money if he received an indemnity, which was in effect a refunding bond.  Express notice of the previous articles of agreement has been traced to Hepburn before he made his contract, consequently he can claim no superior equity, but rests in the same situation with Morrison.  If therefore Diermond has lodged in court the full sum still remaining due on his contract, this is such a case as chancery would refer the distribution of the money to a master, and decree the specific execution of the agreement, and the plaintiff would be entitled to recover.

Verdict for the plaintiff.

Messrs. Duncan, Walker and Wallace, *pro quer.*

Messrs Ingersoll, C. Smith and Hall, *pro def.*

---

### Lessee of JAMES HEPBURN *against* WILLIAM HUTCHINSON.

To give efficacy to an improvement against a written title under the law of 3d April 1792, the former must appear clearly to subsist as such before the commencement of the latter.

EJECTMENT for 202 acres of land on Delaware Run, in Turbett township.

The plaintiff claimed under an application, dated 20th March 1792, founded on a certificate of two justices of the peace, that the lands were unimproved, consequent warrant of the 11th April following, and a survey of 202 acres, on the 28th of the same month, and patent dated 14th May 1792.

The defendant rested on a supposed prior improvement.  He began to cut logs on the ground on the 9th April 1792, two days anterior to the date of the plaintiff's warrant.

The court were clearly of opinion, that this case was not within the provision contained in the 5th section of the act of 3d April 1792, (3 Dall. St. Laws, 210,) " that deputy surveyors shall not by virtue of any warrant, survey any tract of land that may have been actually settled and improved prior to the date of entry of such warrant with such deputy, except for the owner of such settlement and improvement. "  A settlement is defined by the 3d section of the act of 3d December 1786, 2 Dall. St. Laws, 488.  To make an improvement efficacious, it must subsist clearly as such before the commencement of an adverse written title.  If the defendant's doctrine should be sustained, there would be no possible security for any paper title, where the land contemplated to be surveyed, lie at a distance from the seat of government.

Verdict for the plaintiff.

Messrs. Duncan and Hall, *pro quer*.
Messrs. D. Smith and Walker, *pro def*.

---

Lessee of JOHN WATT and HUGH WATT *against* WILLIAM GILMORE.

A variance between the commissioner's advertisement of lands to be sold for non-payment of taxes, assessment and deed, is a fatal exception.
A commissioners' deed under their common seal, is merely void.

EJECTMENT for lands in Turbutt township.

The plaintiff claimed under an application entered in the name of Michael Gillespie, and a survey made thereon, a conveyance by him to Jacob Grove, who conveyed to Abraham Latcha, who conveyed to the lessors of the plaintiff on the 3d December 1773, in consideration of 300*l*.

The defendant claimed under a deed for the premises from the commissioners of the county to him under their common seal, in consideration of 12*l*. 5*s*.  The lands were assessed as the property of Allen Gillespie and James Gailey, for the years 1776, 1777, 1780 and 1785, and sold as their property for non-payment of taxes ; but were advertised as the property of Charles Gillespie and company.