## Mix *v.* Smith.

The title of a warrantee has inception from the date of his application and the affidavit describing the condition of the land. And a settlement commenced after that, with notice that the application has been made, though before it had been filed in the land-office, will not avail against the warrant subsequently granted.

It is not error to admit a grantor's evidence that he had executed a deed.

Assignor of land having previously failed in an ejectment, is a competent witness for his assignee.

*Oct.* 20. The plaintiff in this ejectment gave evidence of a settlement commenced by Hicks on the 14th or 15th of June, 1838, with a conveyance from Hicks to the plaintiff. The defendant showed an application by Brockway for three hundred acres in Jay township, adjoining, &c., the owners' names being mentioned. The *jurat* of the magistrates to the affidavit that this land was vacant, was dated June 12th, 1838, which was the date of the application. This was filed in the land-office on the 18th of June, when a warrant issued, on which a survey was made, including Hicks's improvement. This warrant was assigned by Brockway to the plaintiff, and he was admitted, under exception, to prove the fact of the sale and the payment of the purchase-money. There was a subscribing witness who was not called, and *it seems* the exception extended to the reading of the deed in evidence; but the assignment of errors only extended to the admission of the witness. The assignment was dated December 16, 1844, and plaintiff showed that in 1839, Brockway had failed in an ejectment against Hicks. Hicks, the son of the improver, testified that he had told his father before he went on the land, that Brockway had gone to make an application for a warrant. Overdorff testified that on the 24th of June, Hicks had sent word by him to Brockway that he need not trouble himself any more about this land, that there was a settlement older than his claim. Lewis, a witness for the plaintiff, said he asked Hicks what he was doing there. Hicks told him there was going to be a warrant taken for the place by Brockway, but he had settled on it, and intended to hold it.

In answer to plaintiff's point, his honour said: Whether the warrant was sufficiently descriptive, was for the jury; if there was sufficient in the description to give notice that the land on which the warrant is located is the land applied for, that is all that is necessary. He further instructed the jury: That the application, dated June 12th, was the inception of defendant's title, and if

Hicks knew that Brockway had applied for the land before he entered as a settler, the plaintiff could not recover.

These instructions, with the admission of Brockway as a witness, were assigned for error.

*Jenks*, for plaintiff in error.—A party cannot prove his own deed, but the subscribing witness must be called: Peak. Ca. 99; 1 Stark. Ev. 320; Cain *v.* Henderson, 2 Binn. 108; McClelland *v.* Mahon, 1 Barr, 365. He also argued that the warrant being vague, gave title only from the survey. Location is defined by the act of June 25th, 1781, and no private intention to take up land can prevent a grant by the Commonwealth: Moore *v.* Shaver, 6 Serg. & Rawle, 134. Nor were the vague reports of strangers sufficient to affect him with notice: Kerns *v.* Swope, 2 Watts, 75; Miller *v.* Cresson, 5 Watts & Serg. 284.

*Petriken*, contrà.—The whole question turns upon the charge of the court below. We rest upon the proof of actual notice. If a settler's title commences from the first stroke of the axe, why should not the title of an applicant for a warrant date from the first stroke of the pen? The title of a settler must actually subsist to hold against one claiming under a warrant: Penn. *v.* Huston, Addis. 336.

Where a description is reasonably accurate, it is sufficient, and it is a matter properly to be submitted to the jury.

*Oct.* 30.   GIBSON, C. J.—The principle assumed by the judge below, is sustained by the lessee of Hepburn *v.* Hutchinson, 2 Yeates, 329, in which it was determined that an available improvement under the act of 1792, must be shown to have existed before the commencement of a paper title in conflict with it. What is the commencement of such a title? The first step there, as here, was to procure a certificate from two justices of the peace, specifying whether the land was vacant or improved, as the foundation of an application to the land-office for a warrant; and it was consequently the act which marked the land for appropriation by the applicants. An improvement commenced before it, or after it without notice, and in consequent good faith, and prosecuted with due diligence, would take precedence of it; but not if it was surreptitious. The origin of the written title, therefore, is the certificate of the justices. It is the foundation on which the edification is reared; and when an improver attempts to uproot it, he acts with as much bad faith as he does who clandestinely removes a landmark. The title of a *bonâ fide* settler of vacant land is at-

tached to it by the first stroke of the axe; and why should not the title of an applicant for a particular tract be attached to it by the first stroke of the pen? As an act of appropriation, an improvement is notice of itself; but actual knowledge of an appropriation by application is equally available. The principle is found in the case of a shifted warrant, which furnishes a perfect analogy. Between the owner of a survey on such a warrant and the state, there exists no contract or privity before it is returned into the office and accepted. The survey is an act of appropriation neither by warrant nor by improvement, but by a peculiar species of application recognised by the practice and usages of the land-office. The warrant gives no authority for the survey, which, in respect to that, stands as if there had been no warrant at all. Yet, in Keble *v.* Arthurs, 3 Binn. 29, an improvement made with actual knowledge of even an imperfect and unreturned survey, on a shifted warrant, was postponed; and there are other cases to the same effect. In the case before us it was necessary to affect the improver with notice of the application before the justices; for an improver who expends his money or labour in good faith, is not to lose it for the act of another, which, unlike an improvement, is not a notorious one. He is not precluded by knowing that another intends to take out a warrant for a particular tract, or has it in contemplation; but he comes too late when he knows that another has set his seal on it by an act of incipient appropriation. It is therefore not intention, but an act evidence of it, which is the decisive circumstance. The court very properly put the case before us on the question of notice; and the evidence of Lewis, Hicks, and Overdorffs, afforded evidence of it to be left to the jury. As to the argument that the warrantee's survey ought to have been restricted to the land described in his application, it is enough to say that if the improvement was conceived in iniquity, he was at liberty to disregard it, and appropriate the vacant ground as if the improvement had not been made. Brockway was clearly a competent witness; and there is nothing in the other bills of exceptions.

Judgment affirmed.